**KEYSTONE STEEL & WIRE CO.**
v.
**UNITED STATES.**
No. Civil P-1269.

United States District Court
S. D. Illinois, N. D.
Dec. 16, 1953.

Harry E. Witherell, Peoria, Ill., for plaintiff.

C. H. Johns, on behalf of Interstate Commerce Commission, Washington, D. C., E. R. McConnell, on behalf of Justice Department, Washington, D. C., John B. Stoddart, Jr., U. S. Atty., Springfield, Ill., for the United States.

ADAIR, District Judge.

This Court having heard and considered all of the evidence produced and offered by the parties to this cause, having heard the arguments of counsel, and read and considered the briefs heretofore filed by the respective parties pursuant to leave of Court, makes the following:

### Findings of Fact.

1. Plaintiff, Keystone Steel & Wire Company, is an Illinois corporation with its principal office and place of business in Bartonville, in the County of Peoria, and State of Illinois, and within the jurisdiction of this Court.

2. Between August 23, 1947 and December 8, 1948 inclusive, plaintiff purchased from the Colorado Fuel and Iron Corporation and caused to be shipped by that company from its plant at Minnequa, Colorado, 167 carloads of pig iron which were received by plaintiff at Peoria, Illinois and St. Louis, Missouri. All freight charges on these shipments were borne and paid by plaintiff.

3. On August 30, 1948 the Colorado Fuel and Iron Corporation filed its com-

plaint with the Interstate Commerce Commission (Docket No. 30055) alleging that the rates on pig iron in carload quantities from Minnequa, Colorado to Peoria, Illinois, St. Louis, Missouri, and other points were unjust and unreasonable in violation of Section 1(5) of the Interstate Commerce Act, Title 49 U.S. C.A. § 1(5). Such complaint sought a determination that said rates were then and for the future would be unreasonable, and did not seek reparation inasmuch as said complainant had not paid or borne freight charges.

4. On November 10, 1948 plaintiff intervened in said proceedings (Docket No. 30055), and on November 22, 1948 plaintiff appeared at the hearing held in said proceedings in Denver, Colorado and offered evidence in support of the complaint therein. In its intervening petition plaintiff did not seek reparation for any overcharges on the shipments referred to in paragraph 2 hereof. The order of the Commission granting leave to the plaintiff to intervene in that proceeding contained the proviso "that the permission to intervene herein granted shall not be construed to allow intervener to introduce evidence which will unduly broaden the issues raised in the complaint".

5. By its decision in that proceeding issued June 16, 1949 (274 I.C.C. 239) the Interstate Commerce Commission found and determined that the rates then in effect on pig iron from Minnequa, Colorado to Peoria, Illinois and to St. Louis, Missouri were and for the future would be unreasonable and fixed maximum reasonable rates on pig iron between the points above mentioned for the future. This order with respect to reasonable rates for the future became effective December 30, 1949. No findings were contained in this order with respect to the question as to whether such rates were reasonable during the period covered by the shipments referred to in paragraph 2 hereof.

6. On January 20, 1950 plaintiff herein filed its formal complaint with the In-terstate Commerce Commission seeking reparations from the carriers who handled the shipments of pig iron referred to in paragraph 2 hereof and alleging that the rates charged by said carriers during the period covered by said shipments were unjust and unreasonable in violation of Tit. 49, U.S.C.A. § 1(5). (Docket No. 30480) Subsequently, Division 3 of the Interstate Commerce Commission on October 4, 1950 entered its report in said proceeding finding that an award for reparation to the plaintiff was precluded by Rule 32(b) of the "General Rules of Practice" of the Interstate Commerce Commission, 49 U.S.C.A.Appendix, and on the same date entered its order that the complaint be dismissed.

7. Subsequent to the entry of the order last above mentioned, plaintiff filed its petition for reconsideration of said order and on March 5, 1951 said Interstate Commerce Commission entered its order in said proceeding denying the petition for reconsideration, whereupon the order previously entered by Division 3 of said Commission became final.

8. Rule 32 of the "General Rules of Practice" of the Interstate Commerce Commission provides as follows:

"Formal complaints: Prayers for relief.—(a) Generally. A formal complaint in which relief for the future is sought should contain a detailed statement of the relief desired. Relief in the alternative or of several different types may be demanded, but the issues raised in the formal complaint should not be broader than those to which complainant's evidence is to be directed at the hearing.

"(b) Specific prayer for damages. Except under unusual circumstances, and for good cause shown, damages will not be awarded upon a complaint unless specifically prayed for, or upon a new complaint by or for the same complainant which is based upon any finding in the original proceeding."

9. Rule 72(e) of the Rules of the Commission provides as follows:

"(e) Disposition. Leave (to intervene) will not be granted except on averments reasonably pertinent to the issues already presented and which do not unduly broaden them. If leave is granted, the petitioner thereby becomes an intervener and a party to the proceeding."

10. As permitted by statute, Tit. 28 U.S.C. § 2323, the Interstate Commerce Commission and the carriers who were parties to the proceeding brought by the plaintiff in this cause before the Interstate Commerce Commission seeking reparation as aforesaid have properly intervened in and are now parties to this proceeding.

11. At no time has the Interstate Commerce Commission made any determination on the question as to whether the rates charged by the carriers involved in this proceeding on shipments of pig iron from Minnequa, Colorado to Peoria, Illinois and St. Louis, Missouri during the period of the shipments described in paragraph 2 hereof were unjust and unreasonable in violation of the statute. And the Court adopts the following:

### Conclusions of Law.

1. This Court has full and complete jurisdiction of all the parties to this cause and of the subject matter thereof.

2. Plaintiff having paid and borne charges for the transportation of property which it alleges were unjust and unreasonable charges has a statutory cause of action for damages against the carriers who exacted such charges. Since the success or failure of such action depends upon the question as to whether the rates and charges were unjust and unreasonable at the time when they were exacted from the plaintiff, the only forum in which plaintiff may pursue said cause of action is the Interstate Commerce Commission.

3. The cause of action mentioned in paragraph 2 hereof constitutes property within the meaning of the Fifth Amendment to the United States Constitution of which the plaintiff cannot be deprived without being given notice and a reasonable opportunity to be heard.

4. The previous reported decisions of the Interstate Commerce Commission on the question as to whether the assertion of a right to reparations in a proceeding originally brought for the purpose of challenging the reasonableness of freight rates for the future unduly broadens the issue in said proceeding and on the related question of whether a party to a proceeding brought to challenge the reasonableness of rates for the future may subsequently bring an action for reparations are inconsistent.

5. Provisions of Rule 32(b) of "General Rules of Practice" of the Interstate Commerce Commission as applied in this proceeding are vague and indefinite. The action of the Interstate Commerce Commission in the proceeding brought by the plaintiff herein for reparations before that Commission were such as to deprive the plaintiff of a reasonable opportunity to be heard on its cause of action for reparations.

6. The question as to whether plaintiff was deprived of a reasonable opportunity to be heard on its said cause of action did not arise in the proceedings before the Commission until such time as the Commission entered its order dismissing the complaint for reparations and denying the plaintiff's petition for reconsideration, and the constitutional question thus involved may be raised by the plaintiff for the first time in this proceeding. This suit raises the question of constitutional power of the Commission to enter the orders which it did enter, denying to the plaintiff a hearing on the merits of its alleged cause of action.

7. The order entered by Division 3 of the Interstate Commerce Commission on October 4, 1950 dismissing the complaint of the plaintiff in this cause for reparations and the order entered by the Interstate Commerce Commission on March

5, 1951 denying the plaintiff's petition for reconsideration, and each of them are void.

8. The complaint filed by the present plaintiff for reparations before the Interstate Commerce Commission was not "based upon any finding in the original proceeding". The original proceeding to which this conclusion refers was the proceeding brought by the Colorado Fuel & Iron Corporation, attacking the rates in question as being unjust and unreasonable for the future.

9. The plaintiff in this proceeding is entitled to a hearing before the Interstate Commerce Commission on the merits of its claim for reparations as set forth in the formal complaint filed by said plaintiff before said Commission on January 20, 1950. The orders of the Interstate Commerce Commission entered on October 4, 1950 and March 5, 1951 hereinabove set forth should be vacated and set aside and said Commission directed to proceed to determine the merits of said complaint for reparations in the due course of its administrative procedures.